## Quinn v. Regal Vistas, Inc.

*Thomas O. Malcolm,* for plaintiffs.
*Holbrook M. Bunting, Jr.,* and *C. Walter Randell,* for defendants.

PITT, *J.,* October 7, 1974—1. Plaintiffs herein are owners of certain properties located within the development known as Charter Chase.

2. As owners of said properties, plaintiffs are also members of a nonprofit corporate entity known as the Charter Chase Club (hereinafter called the "club"), a defendant herein. The purpose of said

club is to maintain the common properties within the development.

3. Defendant, Regal Vistas, Inc., is the developer of Charter Chase and also known as the "organizer" in both the recorded covenants and restrictions of the development and in the bylaws of the club.

4. Defendant, Fred P. Meagher, is the president of Regal Vistas, Inc., and is also president and a director of the club.

5. The other members of the board of directors of the club are Robert C. Klaus and Edward H. Behrle, employes of defendant, Regal Vistas, Inc.

6. Plaintiffs pay $150 per year as membership dues for the Charter Chase Club.

7. Plaintiffs are also members of the Charter Chase Social Club (hereinafter called the "social club"), an unincorporated entity whose members are also lot owners within the development and whose activities are separate and apart from the aforesaid Charter Chase Club.

8. In 1969, the club formed a swim club, whose members included plaintiffs herein and other lot owners in the Charter Chase development.

9. In 1970, a swimming pool complex was developed and constructed.

10. The recorded covenants and restrictions denoted the area to be used for the swimming pool as "common property."

11. Defendant, Regal Vistas, Inc., undertook the construction of the swimming pool.

12. The Charter Chase Club subsidized the construction of the swimming pool and each member was assessed $300 plus an additional $50 for the cost of a wading pool.

13. Pursuant to the covenants and restrictions, the organizer, Regal Vistas, Inc., was to relinquish title of the common property to the Charter Chase Club when all improvements to the common property were completed and when, in the opinion of the organizer, the club was able to maintain same but, in no event, later than January 1, 1980.

14. All contemplated improvements to the common properties have been completed.

15. The only reason expressed by the organizer for refusal to relinquish title to the common properties is an alleged indebtedness of the Charter Chase Club for the remainder of moneys expended on pool construction.

## DISCUSSION

The question presented to this court is whether certain events have transpired which would require that defendants relinquish title in the common properties of the development to the organization composed of the lot owners.

Section A(3) of the covenants and restrictions defined the "common properties" as that area of land reserved for the swim club. Section E of those same covenants and restrictions states that the organizer may retain legal title to the common properties until such time as it has completed improvements thereon and until such time as, in the opinion of the organizer, the club is able to maintain the property. In no event, shall the organizer retain title later than January 1, 1980.

The record before us reveals that all improvements with regard to the swimming pool have been completed. Therefore, the organizer must transfer title of the common properties to the club unless there is some valid reason why the club cannot

maintain the property. The opinion of the organizer must be genuine and not prompted by caprice or bad faith: Commonwealth v. Berger, 11 Pa. Commonwealth Ct. 332, 312 A. 2d 100 (1973).

Defendant, Regal Vistas, Inc., bases its refusal to convey the property upon an alleged indebtedness owed by the club to Regal Vistas, Inc. This alleged indebtedness resulted from the construction of the swimming pool. Initially, we note that for such a capital improvement, the bylaws of the club provide in article IV, sec. 3, that a special assessment may be levied on the members of the club. However, such an assessment requires the consent of two-thirds of the voting members of the club and further that each member receive at least 30 days notice of the assessment. The record reveals that these provisions of the bylaws were not followed.

On June 7, 1970, defendant, Fred Meagher, wrote to each club member outlining the proposed pool construction. The letter indicated that each member would be assessed $300 for the cost of the pool, plus an additional $50 for a wading pool. The assessments were paid by the club members; therefore, strict compliance with the bylaws are deemed waived by said payment.

Edward H. Behrle, a member of the board of directors of the club, testified that the estimates obtained for the pool construction were $38,300. He further stated that the club was to pay Regal Vistas, Inc., that amount. However, the record reveals no other basis for an agreement between the club and Regal Vistas, Inc., other than the aforesaid letter from Fred Meagher outlining the proposed assessment. The funds realized from the assessment were less than $38,300. Therefore, defendant's contention that a contract for the entire amount of the pool

construction between Regal Vistas, Inc., and the club existed is without merit. The club cannot be held responsible for the payment of the costs of construction which exceed the amount assessed each club member.

Having found no indebtedness on the part of the club to Regal Vistas, Inc., there can be no valid reason for the refusal of Regal Vistas, Inc., to withhold the conveyance of the common properties to the club.

Plaintiffs' prayer for relief also requests an accounting be made by the officers and directors of the club. This record indicates that the various bylaw requirements concerning audits and accountings and meetings of the club and the election of officers have not been followed and we, therefore, deem it necessary to order strict compliance with the bylaw requirements in those regards.

## CONCLUSIONS OF LAW

1. No contract arose between the club and Regal Vistas, Inc., for the estimated amount for the construction of the swimming pool, that being $38,300.

2. The obligation of the club for pool construction is based solely on the letter of June 7, 1970, from Fred Meagher to the club members which assessed each member $300 for pool construction and $50 for a wading pool.

3. The club members waived compliance with article IV, sec. 3, of the bylaws of the club relating to special assessments for capital improvement by paying the assessment outlined in the aforesaid letter of June 7, 1970.

4. There is no indebtedness due and owing to Regal Vistas, Inc., by the club.

5. The bylaws of Charter Chase Club concerning audits and accounting and meetings and elections have not been observed.

## DECREE NISI

And now, October 7, 1974, having found that all improvements to the common properties of the Charter Chase development have been completed and further that there is no indebtedness owed by the club to defendant, Regal Vistas, Inc., which would justify refusal by Regal Vistas, Inc., to transfer title in the said common properties to the club, it is hereby ordered and decreed that Regal Vistas, Inc., convey to the Charter Chase Club title to the common properties as defined in the recorded covenants and restrictions of the development. Having found that the bylaw requirements of Charter Chase Club concerning audit and accounting and meetings and elections have not been observed, it is further ordered and decreed, that the directors and officers shall observe all bylaw requirements in those regards.

This decree shall become final unless exceptions are taken thereto as by rule provided.